IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JMT SALES, INC. <u>et al.</u>        *
                                     *
v.                                   *     Civil Action No. WMN-13-2201
                                     *
INTERNATIONAL BEAUTY BRANDS,         *
LLC, <u>et al.</u>                   *
                                     *

    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

**<u>MEMORANDUM</u>**

Before the Court is a motion for summary judgment filed by Defendant Perfume Worldwide, Inc. (PWW).  ECF No. 23.  The motion is fully briefed.  Also pending is Plaintiffs' motion for entry of default judgment against Defendant International Beauty Brands LLC (IBB).  ECF No. 10.  Upon review of the filings and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that both motions will be granted.[1]

Plaintiff JMT Sales, Inc. (JMT) is engaged in the business of the sales and distribution of personal care and fragrance products.  Its president and sole shareholder is Plaintiff James M. Theologus.  Defendant IBB, Defendant Perfume Center of America, Inc. (PCA), and Defendant PWW are also distributors of

---

[1] Also pending is PWW's motion to stay discovery and the scheduling of a settlement conference pending the resolution of its motion for summary judgment.  ECF No. 24.  That motion will be denied as moot.

those same types of products.   IBB is also a manufacturer of
personal care and fragrance products.   This action involves
alleged breaches of various contracts between Plaintiffs and the
various Defendants.

Relevant to the instant motion for summary judgment is an
alleged sales commission contract between Plaintiff JMT and
Defendant PWW.   Plaintiffs allege in their Amended Complaint
that "JMT entered into a contract with PCA and PWW whereby JMT
would procure accounts with retailers for the sale and
distribution of PCA and PWW products," ECF No. 11 ¶ 32, and
that, pursuant to that contract, "JMT would earn a 2% commission
on all PCA-PWW's sales from accounts it procured with
retailers." Id. ¶ 33.   JMT then proceeded to procure numerous
accounts with online and "brick and mortar" retailers.   It also
appears that, at least initially, PCA and PWW made commission
payments to JMT but, at some point, PCA and PWW ceased
submitting sales reports to JMT for some retailers and stopped
paying commissions. Id. ¶¶ 35-36.   Based upon this failure to
continue to make commission payments, Plaintiffs asserted claims
against PWW for Breach of Contract (Count V), Unjust Enrichment
(Count VI), and Quantum Meruit (Count VII).

In his deposition, Plaintiff Theologus explains that
relationship between his company, JMT, and PCA began in 2003.
In support of his understanding of the relationship, he has

produced an October 2003 letter from himself to Kanak Golia of PCA that sets out an outline of the proposed relationship.  ECF No. 23-4.  On the top of the letter is a handwritten notation that it was "Revised 11/03" and a considerable number of handwritten notations are found on the letter, presumably written by Theologus.  While it is signed by Theologus, it contains no other signatures.  Theologus also testified that in late 2010 or early 2011, he had further discussions, primarily with Kanak Golia, to extend the commission contract to PWW, which he perceived to be a division of PCA.  ECF No. 23-5 at 57-59.  The alleged agreement related to PWW, however, was never memorialized in a written agreement.  Id. at 59.

Defendant PWW has moved for summary judgment on all claims asserted by Plaintiffs against PWW arising from this alleged agreement on the ground that they are barred by the applicable statute of frauds.  In making this argument, PWW makes several assertions that are not challenged by Plaintiffs.  First, PWW represents that it is a separate company from PCA and thus any agreement Plaintiffs may have had with PCA is not applicable to PWW.  ECF No. 23-1 at 4 n.4.  While Plaintiffs allege in their Amended Complaint that PWW is "an affiliate and/or alter ego" of PCA, ECF No. 11 ¶ 12, they make no argument nor do they supply any evidence supporting that allegation in their opposition to the summary judgment motion.  Second, PWW presents evidence that

3

all relevant conversations concerning any agreement between JMT
and PWW took place in New York and thus New York law,
specifically the New York Statute of Frauds, applies to the
alleged contract.  <u>See</u> ECF No. 23-1 at 3-4 (citing Theologus
deposition and an affidavit of Piyush Golia).  While Plaintiffs
assert in their Amended Complaint that "[a]t all relevant times,
Defendants IBB, PCA, and PWW negotiated and contracted with
Plaintiffs in the State of Maryland," ECF No. 11 ¶ 37, they
offer nothing in opposing the summary judgment motion to support
that assertion.

     Defendant PWW contends that § 5-701(a)(1) of the New York
Statute of Frauds bars Plaintiffs' claims against it.[2]  Section
5-701(a)(1) provides in pertinent part that  "[e]very agreement,
promise or undertaking is void, unless it or some note or
memorandum thereof be in writing, and subscribed by the party to
be charged therewith, or by his lawful agent, if such agreement,
promise or undertaking . . . [b]y its terms is not to be
performed within one year from the making thereof . . . ."  N.Y.
Gen. Obl. Law § 5-701(a)(1).  It has been long and well
established under New York law that "'[a] service contract of
indefinite duration, in which one party agrees to procure

---

[2] Defendant PWW also maintains that § 5-701(a)(10) of the New
York Statute of Frauds also applies to this alleged agreement.
Because the Court finds that § 5-701(a)(1) clearly applies, it
need not reach this alternative argument.

customers or accounts or orders on behalf of the second party,
is not by its terms performable within a year — and hence must
be in writing . . . — since performance is dependent, not upon
the will of the parties to the contract, but upon that of a
third party.'" Nasso v. Bio Reference Labs., Inc., 892 F. Supp.
2d 439, 447 (E.D.N.Y. 2012) (quoting Zupan v. Blumberg, 141
N.E.2d 819, 820 (N.Y. 1957)). See also Guterman v. RGA Assocs.,
Inc., 602 N.Y.S.2d 116, 117 (1st Dept. 1993) (holding that
"[t]he indefinite promise to pay commission on all future sales
is clearly within the Statute [of Frauds] and voidable for want
of a writing satisfying the Statute").

The alleged contract upon which Plaintiffs based their
claims against PWW clearly falls within this class of contracts
that is voidable under the Statute of Frauds for lack of a
writing.  It is an alleged promise to pay commissions on all
future sales to vendors procured by JMT.  Theologus testified in
his deposition that his intention was that the parties "were to
do business forever."  ECF No. 23-5 at 82, 84 ("Q: When you
entered into a contract with [PWW], did you believe it would
last longer than a year?  A: Yes.  Q: More than two years?  A:
Yes.  Q: More than 10 years?  A: Yes.").  Thus, it clearly falls
under § 5-701(a)(1).

In opposing the motion for summary judgment, Plaintiffs
completely ignore the well-established line of cases cited above

and on which PWW relied in its motion.  The only case cited by
Plaintiffs that arguably relates to a similar contract and the
case on which they primarily rely, Stillman v. Kalikow, 802
N.Y.S.2d 714 (2nd Dept. 2005), is readily distinguishable.  In
Stillman, the plaintiff entered into an oral agreement to
negotiate joint ventures related to three development projects
and to market those properties to potential tenants.  The
defendant argued that the contract fell under § 5-701(a)(1) on
the ground that the plaintiff's services included monitoring the
development of the projects, including the construction process,
which normally took from 12 to 14 months.  802 N.Y.S.2d at 716.
In opposition, the plaintiff countered that his services
primarily involved negotiating the joint venture for the
projects, a process that could be completed in six months.  Id.
Based on that testimony, the court found that plaintiff "raised
a triable issue of fact as to whether the alleged agreement was
removed from the statute of frauds."  Id. at 716-17.

     Unlike the alleged agreement at issue here, Stillman did
not involve an open-ended promise for commission on all future
transactions.  Most significantly, the agreement was not
dependent on the will of third parties outside of the agreement,
at least as that agreement was set out in the Stillman opinion.
It is that aspect of future commission contracts that, in the

view of New York courts, places those agreements clearly within
the scope of the Statute of Frauds.

Plaintiffs also argue that PWW's part performance of the
alleged agreement "exempts [the] agreement from the statute of
frauds completely." ECF No. 26-1 at 4. Plaintiffs note that
PWW's president, Piyush Golia, testified that "JMT Sales made
the agreed upon introductions and PWW forwarded them some
compensation for the same." ECF No. 26-1 at 5 (citing ECF No.
26-2, Dep. of Piyush Golia). The doctrine of part performance,
however, "'may be invoked only if plaintiff's actions can be
characterized as "unequivocally referable" to the agreement
alleged. It is not sufficient . . . that the oral agreement
gives significance to plaintiff's actions. Rather, the actions
alone must be "unintelligible or at least extraordinary",
explainable only with reference to the oral agreement.'" Nasso,
892 F. Supp. 2d at 450 (quoting Anostario v. Vicinanzo, 450
N.E.2d 215, 216 (N.Y. 1983), quoting Burns v. McCormick, 135
N.E. 273 (N.Y. 1922)).

Here, the parties' actions are equally consistent with the
understanding of the arrangement described by Golia in his
deposition, i.e., that JMT and PWW had multiple agreements for
"tiered" payments amounting to 2% for the first six months, 1%
for the second six months, and zero after that. See ECF No. 26-
2 at 21-22. The conduct is not "unequivocally referable" to the

7

agreement as alleged by Plaintiffs.  See Ghaffari v. Rima Invs. Corp., 698 N.Y.S.2d 680, 681 (1st. Dept. 1999) (holding that "doctrine of part performance does not avail plaintiff" where the plaintiff's acceptance of commissions for amounts less than she was alleging were owed was "as referable to the series of individually negotiated ad hoc agreements asserted by defendants as with the fixed agreement asserted by plaintiff").

As Plaintiffs' breach of contract claim is barred by the Statute of Frauds, so too are their claims for "unjust enrichment" and "quantum meruit."  These claims rely upon the exact same allegations as their breach of contract claim and courts applying New York law have consistently held that plaintiffs cannot plead these alternative claims to avoid the writing requirement of the Statute of Frauds.  See Rosbach v. Indust. Trading Co., Inc., 81 F. Supp. 2d 522, 525 (S.D.N.Y. 2000) (dismissing unjust enrichment claim where contract was barred under the Statute of Frauds); Roberts v. Champion Int'l. Inc., 382 N.Y.S.2d 790, 791 (1st Dept. 1976) (holding that a plaintiff cannot circumvent the statutory requirement of a writing by pleading a cause sounding in quantum meruit).

The Court now turns to Plaintiffs' motion for entry of default judgment against IBB.  In their verified Amended Complaint, Plaintiffs allege a contract between JMT and IBB pursuant to which JMT would be paid a commission of 5% of all

retail sales for the accounts it managed on behalf of IBB.  ECF
No. 11 ¶ 14.[3]  Plaintiffs allege that JMT sent two invoices to
IBB for amounts that totaled $27,850.63 and that these invoices
were never paid.  Id. ¶¶ 17-21.  Plaintiffs also allege that on
January 25, 2010, Theologus and JMT loaned IBB $100,000 that was
to have been repaid upon the first order of a particular brand
of IBB's product.  That loan, however, has never been repaid,
despite the first order having been placed and Plaintiffs'
demand for repayment.  Id. ¶¶ 24-27.  Finally, Plaintiffs allege
that IBB took another loan from JMT for $20,000 that was to be
repaid no later than December 31, 2010, but it too has yet to be
repaid.

       After IBB was served with the original Complaint and failed
to respond, the Clerk of this Court entered an Order of Default
against Defendant IBB on February 27, 2014.  ECF No. 7.
Plaintiffs have now moved for entry of default judgment.  In
addition to judgment in the amount of $47,850.63 in favor of
JMT, and judgment in the amount of $100,000 in favor of
Theologus and JMT, Plaintiffs seek $5,065.00 in attorney's fees.

---

[3] It is not clear from Plaintiffs' allegation whether this
agreement was oral or was reduced to writing.  To the extent
that this agreement might be subject to the Statute of Frauds,
the Court notes that this defense can be waived if not raised in
a defendant's answer or a responsive pleading.  Kessenich v.
Raynor, 120 F. Supp. 2d 242, 250 (E.D.N.Y. 2000) ("Generally, a
defendant is obliged to raise the Statute of Frauds in the
Answer or be deemed to have waived it.").

That last request is supported solely by a billing statement submitted with the motion for default judgment.  ECF No. 10-2.

Rule 54 of the Federal Rules of Civil Procedure permits that, where claims are asserted against multiple parties, the Court "may direct the entry of judgment against one or more, but fewer than all" parties, but it can only do so if it "determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b). Here, it appears that the liability of IBB is independent from that of the other Defendants.  Counts I, II, and III are asserted only against IBB and arise from contracts involving only IBB.  Thus, the Court finds no reason for delay.  The Court does note, however, that Plaintiffs have provided no statutory or other basis upon which they would be entitled to the award of attorney's fees in this action.  Thus, the Court declines to enter an award for attorney's fee at this time.

A separate order consistent with this memorandum will issue.

_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: January 21, 2015